# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ISAAC SOLEIMANI and INE Soleimani LP, a Delaware Limited Partnership, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. 2023-0948-LWW |
| ANDRE HAKKAK, DARIUS MOZAFFARIAN, BARBARA MCKEE, DAVID HACKETT, AND HALLE BENETT, | ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| WHITE OAK HEALTHCARE FINANCE, LLC, A Delaware Limited Liability Company, WHITE OAK HEALTHCARE FINANCE DIRECT, LLC, a Delaware Limited Liability Company, WHITE OAK HEALTHCARE MOB, LLC, a Delaware Limited Liability Company, WHITE OAK H-ALTERNATIVE, LLC, a Delaware Limited Liability Company, WHITE OAK HEALTHCARE REAL ESTATE SALE-LEASEBACK, LLC, a Delaware Limited Liability Company, and WHITE OAK REAL ESTATE DEBT, LP, a Delaware Limited Partnership, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Nominal Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: February 6, 2024
Date Decided: April 12, 2024

Brian C. Ralston, T. Brad Davey, Charles P. Wood, and Abraham C. Schneider, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Douglas P. Baumstein and Ellen Shapiro, MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C., New York, New York; *Counsel for Plaintiffs Isaac Soleimani and INE Soleimani LP*

Blake Rohrbacher, Mari Boyle, and Morgan R. Harrison, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Anthony M. Candido, CLIFFORD CHANCE US LLP, New York, New York; *Counsel for Defendants Andre Hakkak, Darius Mozaffarian, Barbara McKee, David Hackett, Halle Benett, Nominal Defendants White Oak Healthcare Finance, LLC, White Oak Healthcare Finance Direct, LLC, White Oak Healthcare MOB, LLC, White Oak H-Alternative, LLC, White Oak Healthcare Real Estate Sale-Leaseback, LLC, and White Oak Real Estate Debt, LP*

**WILL, Vice Chancellor**

This case concerns whether the defendants' attempted termination of Isaac Soleimani as an employee and manager of several limited liability companies was effective to remove him under the entities' governing agreements. The agreements, which were negotiated by sophisticated parties represented by counsel, establish an order of operations by which Soleimani can be removed. He may be removed as an employee provided that certain payment obligations detailed in a term sheet have been satisfied. And he may be removed as manager after he is removed as an employee.

It is undisputed that the relevant payments have not been made to Soleimani. Thus, the condition precedent to his removal as an employee is unmet. He remains the manager of the limited liability companies as a matter of law. Summary judgment is therefore entered for Soleimani.

## I. BACKGROUND

The following background is drawn from the undisputed facts in the pleadings and the documents they incorporate by reference.[1]

### A. White Oak Healthcare

On November 25, 2015, plaintiff Isaac Soleimani was offered employment by White Oak Global Advisors, LLC ("White Oak Global")—an investment advisor

---

[1] Citations in the form of "Pls.' Opening Br. Ex. __" refer to exhibits to the Transmittal Affidavit of Charles P. Wood in Support of Plaintiffs' Opening Brief of Their Motion for Summary Judgment. Dkt. 55.

and private credit firm providing small and middle market businesses with lending products and services.[2]  Soleimani was offered the position of Managing Director and Head of White Oak Healthcare Finance, LLC ("White Oak Healthcare").[3] Nominal defendant White Oak Healthcare, a Delaware limited liability company, is a business line of White Oak Global.[4]  Soleimani accepted the role, with a December 31, 2015 start date.[5]

An initial term sheet enclosed with the offer letter (the "Term Sheet") contemplated that Soleimani would have "primary leadership and management responsibility for" White Oak Healthcare.[6]  He would receive an 18% revenue sharing interest in White Oak Healthcare.[7]  And he would receive the "Calculated Fair Market Value" of that interest upon the occurrence of a "Specified Termination Event."[8]  A "Specified Termination Event" was defined to include a termination

---

[2] Pls.' Opening Br. Ex. 3 ("Term Sheet"); *see also* Aff. of Darius Mozaffarian (Dkt. 59) ("Mozaffarian Aff.") ¶ 3.

[3] Term Sheet 1.

[4] Verified Compl. Pursuant to 6 *Del. C.* 17-110 and 6 Del. C. 18-110 (Dkt. 1) ("Compl.") ¶ 9; Individual Defs.' Answer to Verified Comp. (Dkt. 27) ("Answer") ¶ 9.

[5] Compl. ¶ 25; Answer ¶ 25; *see* Term Sheet 2.

[6] Term Sheet 2.

[7] *Id.*

[8] *Id.* at 4.  The "Calculated Fair Market Value" means the value of the interests "as determined by a third party appraiser agreed to by [Soleimani] and [White Oak Healthcare], acting reasonably and in good faith."  *Id.*

"after five (5) years" from Soleimani's start date "for any reason."[9] Disputes under the Term Sheet were first to be mediated before the parties submitted to arbitration.[10]

The White Oak Healthcare Finance, LLC Limited Liability Company Agreement designated Soleimani the Manager of White Oak Healthcare.[11] Soleimani's 18% revenue sharing interest was reflected in the agreement as Class B units.[12] Currently, Soleimani holds a 16.785% equity interest, with other White Oak Healthcare employees holding a total of 6.75% and investor funds managed by White Oak Global holding the remaining 76.465%.[13]

Over time, four additional entities were formed to conduct White Oak Healthcare's business. Nominal defendants White Oak Healthcare Finance Direct LLC, White Oak Healthcare MOB, LLC, White Oak H-Alternative, LLC, and White Oak Healthcare Real Estate Sale-Leaseback, LLC, (together with White Oak Healthcare, the "White Oak LLCs") are Delaware limited liability companies.[14] Nominal defendant White Oak Real Estate Debt, LP (the "Partnership" and, together

---

[9] *Id.*

[10] *Id.* at 12.

[11] Pls.' Opening Br. Ex. 4 ("White Oak Healthcare LLC Agreement") § 6.1.

[12] Pls.' Opening Br. Ex. 4 at 3.

[13] White Oak Healthcare LLC Agreement Ex. A; *see also* Pls.' Opening Br. Exs. 5-9 at Ex. A.

[14] Compl. ¶¶ 9-13; Answer ¶¶ 9-13.

with the White Oak LLCs, the "White Oak Entities") is a Delaware limited liability partnership.[15]  These entities are governed by substantively identical agreements.[16]

## B.    The Governing Agreements

The governing agreements for the White Oak LLCs (together, the "LLC Agreements") each designate Soleimani as the entity's Manager.[17]  They provide the Manager with broad authority to direct the activities of the White Oak Entities, subject to certain negative control rights vested in the entity's Approval Committee.[18]  The Approval Committees are controlled by White Oak Global through individual defendants Andre Hakkak, Darius Mozaffarian, Barbara McKee, and David Hackett—each White Oak Global principals.[19]

Section 6.1 of the LLC Agreements sets out the process by which Soleimani may be removed as Manager.  It states that Soleimani can be removed as an employee consistent with the Term Sheet, "provided that the Company has satisfied its obligations under the Term Sheet relating to a Specified Termination Event."[20]  If

---

[15] Compl. ¶ 14; Answer ¶ 14.  At times, the individual White Oak Entities are referred to as the "Company."

[16] *See* Pls.' Opening Br. Exs. 4-9.

[17] Pls.' Opening Br. Exs. 4-8 (together, the "LLC Agreements") § 6.1.

[18] *E.g.*, LLC Agreements §§ 6.1, 6.4.

[19] Compl. ¶¶ 4-7; Answer ¶¶ 4-7.

[20] LLC Agreements § 6.1; *see infra* note 62 and accompanying text.

4

Soleimani is removed as an employee, then he "may be removed as a Manager by the Approval Committee."[21]

Section 6.1 of the limited partnership agreement governing the Partnership is nearly identical, except that Soleimani is an employee of the Partnership and White Oak Real Estate Debt GP, LLC ("White Oak GP") is the General Partner. Soleimani may be removed as an employee "provided that the Partnership has satisfied its obligations under the Term Sheet relating to a Specified Termination Event."[22] If Soleimani is removed as an employee, "the General Partner may be removed as the General Partner of the Partnership by the Approval Committee."[23]

### C. The Amended Term Sheet

In 2020, the parties negotiated amendments to the Term Sheet.[24] Each side was represented by counsel.[25]

On October 9, 2020, Soleimani, White Oak Finance, and White Oak Global executed Amendment No. 1 to the Term Sheet (the "Amended Term Sheet").[26] The

---

[21] LLC Agreement § 6.1.

[22] Pls.' Opening Br. Ex. 9 § 6.1.

[23] *Id.*

[24] *See* Compl. ¶ 23; Answer ¶ 23; Mozaffarian Aff. ¶¶ 20-21. The parties also negotiated revisions to the LLC Agreements. None are relevant to this action. Section 6.1 remained unchanged from the original versions.

[25] *See* Pls.' Opening Br. Ex. 11.

[26] Pls.' Opening Br. Ex. 10 ("Am. Term Sheet"). The initial Term Sheet and Amended Term Sheet are, at times, together referred to as the Term Sheet.

Amended Term Sheet established additional Specified Termination Event obligations, including the purchase of Soleimani's equity stake for fair market value.[27] The definition of "Specified Termination Event" continued to mean, among other things, termination of Soleimani's employment "by either [Soleimani] or [White Oak Healthcare] after five (5) years from" Soleimani's 2015 start date "for any reason."[28] Other than the express amendments, the original Term Sheet remained "in full force and effect in accordance with its terms."[29]

### D. Soleimani's Purported Removal

On September 18, 2023, the Approval Committees of the White Oak Entities purportedly terminated Soleimani's employment for "Cause" (as defined in the Amended Term Sheet).[30] They also purported to remove Soleimani as the White Oak LLCs' Manager and as the Partnership's General Partner.[31] The Approval Committees sought to appoint Halle Benett as Manager of the White Oak LLCs and General Partner of the Partnership.[32] After realizing that White Oak GP (not Soleimani) was the General Partner, the Approval Committees approved a

---

[27] Am. Term Sheet §§ 3, 6(i)(B)(iii); *see* Compl. ¶¶ 23-24; Answer ¶¶ 23-24.

[28] Am. Term Sheet § 3.

[29] *Id*. § 7(h).

[30] Pls. Opening Br. Ex. 1; *see also* Compl. ¶ 1; Answer ¶ 1.

[31] Pls. Opening Br. Ex. 1; *see also* Compl. ¶ 1; Answer ¶ 1.

[32] Compl. ¶ 27; Answer ¶ 27.

6

September 21, 2023 resolution rescinding the September 18 resolution with respect to the Partnership.[33] Soleimani was informed of the actions by letter later on September 18.[34]

The White Oak Entities have not paid Soleimani for the value of his equity stake.[35] Soleimani estimates that it may be worth approximately $109 million to $143 million.[36]

### E. This Litigation

Soleimani filed this litigation on September 18, 2023—the same day that he received notice of his termination.[37] The action is brought under 6 *Del. C.* §§ 17-110 and 18-110.[38] Soleimani brought a single claim seeking a declaration that his removal as an employee and Manager of the White Oak LLCs, and the removal of White Oak GP as the General Partner of the Partnership, are ineffective.

On September 26, I granted Soleimani's motion to expedite and entered a status quo order pending the resolution of the action.[39] The status quo order

---

[33] Mozaffarian Aff. Ex. 14; Pls.' Opening Br. Ex. 2.

[34] Pls. Opening Br. Ex. 1.

[35] Compl. ¶ 33; Answer ¶ 33.

[36] *See* Pls.' Opening Br. in Supp. of Their Mot. for Summ. J. (Dkt. 55) ("Pls.' Opening Br.") 15 n.5. I make no finding as to whether this estimate is accurate.

[37] Dkt. 1. INE Soleimani LP, a Delaware limited partnership that is a limited partner of the Partnership, is also a plaintiff. Compl. ¶ 3.

[38] *Id.* ¶ 1.

[39] Dkts. 18, 25.

contemplated that Bennet would serve as the Manager of the White Oak LLCs and that White Oak GP would remain the General Partner of the Partnership during the pendency of this action.[40]  After motions practice, I entered a modified status quo order on December 4.[41]

On December 15, the parties filed cross-motions for summary judgment regarding whether Soleimani remains Manager of the White Oak LLCs.[42]  By that point, the claim concerning the Partnership was moot since the defendants agreed that White Oak GP remains the General Partner of the Partnership.[43]  Briefing was completed on January 23, 2024.[44]  I heard oral argument on the cross-motions on February 6 and took the matter under advisement.[45]

---

[40] Dkt. 25 ¶ 4.

[41] Dkt. 50.

[42] Dkts. 55-59.

[43] *See supra* note 33 and accompanying text; *see also* Defs.' Opening Br. in Supp. of Their Mot. for Summ. J. (Dkt. 57) ("Defs.' Opening Br.") 49; Pls.' Opening Br. 2-3.  The plaintiffs argue that the effectiveness of Soleimani's purported removal as an employee of the Partnership remains at issue.  Pls.' Opening Br. 3.  But such relief is neither sought in the complaint nor within the scope of the plaintiffs' Section 17-110 claim.  *See* Compl. ¶ 34 (requesting a declaration that the "purported removal" of White Oak GP "as the General Partner of [the Partnership] was and is invalid and ineffective"); *id.* at 13-14 (asking for declaratory relief concerning the identity of the General Partner of the Partnership); 6 *Del. C.* § 17-110 ("Upon application of any partner, the Court of Chancery may hear and determine the validity of any admission, election, appointment or removal or other withdrawal of a general partner of a limited partnership, and the right of any person to become or continue to be a general partner of a limited partnership . . . .").

[44] Dkts. 65-66.

[45] Dkt. 69.

8

## II. ANALYSIS

Court of Chancery Rule 56 permits summary judgment to be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[46] When parties cross-move for summary judgment, "the court must examine each motion separately and only grant a motion for summary judgment to one of the parties when there is no disputed issue of material fact and that party is entitled to judgment as a matter of law."[47] Facts "must be viewed in the light most favorable to the nonmoving party and the moving party has the burden of demonstrating that there is no material question of fact."[48]

Section 18-110 of the Delaware Limited Liability Company Act empowers this court to address the validity of Soleimani's removal as Manager of the White Oak LLCs.[49] The claim turns on the interpretation of contracts governing the parties' relationship. Such issues are "readily amenable to summary judgment" because "proper interpretation of language in a contract . . . is treated as a question of law."[50]

---

[46] Ct. Ch. R. 56(c).

[47] *Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 160, 167 (Del. Ch. 2003) (citation omitted).

[48] *Senior Tour Players 207 Mgmt. Co. LLC v. Golftown 207 Hldgs. Co. LLC*, 853 A.2d 124, 126 (Del. Ch. 2004).

[49] 6 *Del. C.* § 18-110(a).

[50] *Tetragon Fin. Gp. Ltd. v. Ripple Labs Inc.*, 2021 WL 1053835, at *3 (Del. Ch. Mar. 19, 2021) (first quoting *Barton v. Club Ventures Invs. LLC*, 2013 WL 6072249, at *5 (Del. Ch. Nov. 7, 2013); and then quoting *Pellaton v. Bank of N.Y.*, 592 A.2d 473, 478 (Del. 1991)).

9

Summary judgment may be available "(1) when the contract is unambiguous, or (2) when the extrinsic evidence fails to create a triable issue of material fact."[51]

The LLC Agreements are governed by Delaware law.[52] "Delaware courts adhere to the 'objective' theory of contracts, *i.e.*, a contract's 'construction should be that which would be understood by an objective reasonable third party.'"[53] The court must "giv[e] meaning to each term and avoid[] an interpretation that would render any term 'mere surplusage.'"[54] If an agreement is unambiguous, its terms are "the sole source for gaining an understanding of intent."[55] "[A] contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings."[56] An interpretation may be unreasonable if it produces a result that is

---

[51] *Julius v. Accurus Aerospace Corp.*, 2019 WL 5681610, at *7 (Del. Ch. Oct. 31, 2019), *aff'd*, 241 A.3d 220 (Del. 2020).

[52] LLC Agreements § 11.8.

[53] *Cantera v. Marriott Senior Living Servs., Inc.*, 1999 WL 118823, at *4 (Del. Ch. Feb. 18, 1999) (quoting *Supermex Trading Co., Ltd. v. Strategic Sols. Gp., Inc.*, 1998 WL 229530, at *3 (Del. Ch. May 1, 1998)).

[54] *Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 846 (Del. 2019) (quoting *Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396-97 (Del. 2010)); *see also Weinberg v. Waystar, Inc.*, 294 A.3d 1039, 1044 (Del. 2023).

[55] *Holifield v. XRI Inv. Hldgs. LLC*, 304 A.3d 896, 924 (Del. 2023) (quoting *City Inv. Co. Liquidating Tr. v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993)).

[56] *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992); *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997) (explaining that ambiguity does not arise simply because the parties disagree about a contract's intended construction).

absurd or that "no reasonable person would have accepted when entering the contract."[57] Alternative entity agreements are "construed like any other contract."[58]

I begin by assessing whether Section 6.1 of the LLC Agreements created a condition precedent to Soleimani's removal. I then consider whether the defendants satisfied their obligations under the contracts. Both issues are resolved in favor of Soleimani.

### A. Whether Soleimani's Removal Complies With the Governing Agreements

Soleimani has not been paid for his equity stake.[59] The parties dispute whether this means that the defendants' purported termination of Soleimani was ineffective to remove him as an employee and Manager of the White Oak LLCs. Soleimani reads Section 6.1 of the LLC Agreements as requiring the satisfaction of Specified Termination Event obligations under the Term Sheet before he can be removed as an employee and then as Manager.[60] In the defendants' view, however, Section 6.1 authorizes the Approval Committees to remove Soleimani as Manager upon the termination of his employment irrespective of any Specified Termination Event

---

[57] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010).

[58] *Arbor Place, L.P. v. Encore Opportunity Fund, L.L.C.*, 2002 WL 205681, at *3 (Del. Ch. Jan. 29, 2002).

[59] Compl. ¶ 33; Answer ¶ 33.

[60] Pls.' Opening Br. 20.

11

obligations in the Term Sheet.[61]  The plain terms of the LLC Agreements support

Soleimani's position.

> Section 6.1 of the LLC Agreements states, in relevant part:

> Mr. Soleimani may be removed by the Company as an employee in accordance with the provisions of the Term Sheet, ***provided that the Company has satisfied its obligations under the Term Sheet relating to a Specified Termination Event*** (as defined in the Term Sheet).  In the event that Mr. Soleimani is so removed as an employee of the Company, he may be removed as a Manager by the Approval Committee (excluding for this purpose the Manager).  Such Approval Committee shall have the right to designate a replacement Manager in the event of a resignation or removal of Mr. Soleimani as the Manager in accordance with this Section 6.1.[62]

If any of the White Oak LLCs were to terminate Soleimani, this provision

contemplates a series of steps to effectuate his removal.  First, the Company must

"satisf[y] its obligations under the Term Sheet relating to a Specified Termination

Event."[63]  After doing so, it may "remove[] [Soleimani] as an employee of the

Company."[64]  If he is removed as an employee, he may then be "removed as a

Manager by the Approval Committee."[65]

---

[61] Defs.' Opening Br. 40.

[62] LLC  Agreements § 6.1 (emphasis added).

[63] *Id*.

[64] *Id.*

[65] *Id.*

The phrase "provided that the Company has satisfied" creates a condition precedent to Soleimani's removal as an employee.[66]  A condition precedent "must be expressed clearly and unambiguously," and is typically evidenced by "such terms as 'if,' 'provided that,' 'on condition that,' or some other phrase that conditions performance."[67]  Here, Soleimani's removal as an employee is conditioned upon the satisfaction of the Term Sheet's Specified Termination Event obligations.  The drafters' choice of the present perfect tense "has satisfied," which indicates a completed action, further supports this construction.[68]

The defendants, for their part, maintain that the proviso is not a condition but an acknowledgement that the Company may have payment obligations under the

---

[66] *See generally Thomas v. Headlands Tech Principal Hldgs., L.P.*, 2020 WL 5946962, at *5 (Del. Super. Sept. 22, 2020) ("The existence of conditions precedent 'are ultimately a question of contract interpretation.'" (quoting *Casey Empl. Servs., Inc. v. Dali*, 1993 WL 478088, at *4 (Del. Nov. 18, 1993))).

[67] *Murphy Marine Servs. of Delaware, Inc. v. GT USA Wilm., LLC*, 2022 WL 4296495, at *12 (Del. Ch. Sept. 19, 2022) (first quoting *Aveanna Healthcare, LLC v. Epic/Freedom, LLC*, 2021 WL 3235739, at *25 (Del. Super. July 29, 2021) (citation omitted); and then quoting 13 Williston on Contracts § 38.16 (4th ed.), Westlaw (database updated May 2022) (citation omitted)).

[68] The perfect tense is formed by use of the auxiliary verb "has" or "have" before the main verb and "is used to refer to an action that began in the past and is completed at the time of speaking." *The present perfect*, Merriam-Webster, https://www.merriam-webster.com/dictionary/the%present%20perfect (last visited Apr. 7, 2024); *see also Pearl City Elevator, Inc. v. Gieseke*, 2021 WL 1099230, at *16 (Del. Ch. Mar. 23, 2021) (observing that the perfect tense construction refers to "past actions" that have already been completed), *aff'd*, 265 A.3d 995 (Del. 2021).

13

Term Sheet if it terminates Soleimani.[69] They aver that their authorization to remove Soleimani as an employee or Manager is not limited by the Specified Termination Event obligations in the Term Sheet. Put differently, they read Section 6.1 as both reflecting that Soleimani may be removed as an employee pursuant to the Term Sheet and acknowledging that the Term Sheet my create separate obligations.

The defendants' interpretation is inconsistent with the text of Section 6.1. Had the drafters wished to confirm that certain obligations remain under the Term Sheet after an effective termination, they could have indicated as much.[70] They instead chose a clause "that introduces a condition by the word *provided*," which "modifies the immediately preceding language."[71] If Section 6.1 were intended to confirm obligations under the Term Sheet, the phrase "has satisfied" would be superfluous.[72]

---

[69] Defs.' Opening Br. 32.

[70] For example, they could have written the relevant proviso of Section 6.1 to state that "the Company **shall satisfy** its obligations under the Term Sheet relating to a Specified Termination Event."

[71] Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 154 (2021). The defendants cite this book for the notion that provisos do not always create conditions. Defs.' Opening Br. 33-34. That is true. Scalia and Garner do not, however, suggest that the phrase "provided that" cannot create a condition precedent— particularly when the phrase is combined with the present perfect tense.

[72] *See Waystar*, 294 A.3d at 1044 (confirming that Delaware courts "endeavor to give each provision and term effect and not render any terms meaningless or illusory"); *W. Willow-Bay Ct., LLC v. Robino-Bay Ct. Plaza, LLC*, 2007 WL 3317551, at *11 (Del. Ch. Nov. 2, 2007) ("Delaware courts . . . prefer to interpret contracts to give effect to each term rather than to construe them in a way that renders some terms repetitive or mere surplusage.").

The parties' use of the future tense "provided . . . shall" in other parts of the LLC Agreements further suggests that the "provided that . . . has satisfied" construction in Section 6.1 creates a condition precedent. For example, Section 3.1 states:

> Subject to the provisions of this Agreement, the Company is authorized to issue LLC Interests in the Company in such percentages as the Manager shall determine. Such LLC Interests shall initially consist of three classes, Class A Interests, Class B Interests and Class C Interests, ***provided that*** the Class A Interests ***shall*** be divided into series with respect to the issuance of such LLC Interests in respect of Capital Contributions received by the Company from time to time.[73]

Similarly, Section 6.5(f) states:

> Promptly after receipt by a Covered Person of notice of the commencement of any Proceeding, such Covered Person shall, if a Claim for indemnification in respect thereof is to be made against the Company, give written notice to the Company of the commencement of such Proceeding; ***provided***, that the failure of any Covered Person to give such notice as provided herein ***shall*** not relieve the Company of its obligations under this Section 6 except to the extent that the Company is actually prejudiced by such failure to give such notice.[74]

The provisos in these examples modify verbs in the future tense—not the present perfect tense used in Section 6.1. Using the present perfect tense creates a necessary condition that must be accomplished before the ultimate conclusion (an effective

---

[73] LLC Agreements § 3.1 (emphasis added).

[74] *Id*. § 6.5(f) (emphasis added).

termination) can be achieved.  The use of different language in sections of a contract indicates that the distinction is intentional.[75]

Finally, reading Section 6.1 as creating a condition precedent to Soleimani's removal does not conflict with the relevant contracts as a whole.  According to the defendants, paying amounts owed in a Special Termination Event cannot occur before the termination's effectiveness because the Term Sheet allows them to fire Soleimani "at any time and for any reason."[76]  Having the unlimited right to terminate Soleimani does not, however, mean that the termination is unconditional or immediate.  There is no conflict between the right to terminate at any time under the Term Sheet and the proviso of Section 6.1 of the LLC Agreements requiring certain conditions to be satisfied for the termination to become effective.[77]  Even if

---

[75] *See Williams Cos., Inc. v. Energy Transfer LP*, 2020 WL 3581095, at *12 n.123 (Del. Ch. July 2, 2020) ("One principle of contract interpretation in Delaware is that the use of different language in different sections of a contract suggests the difference is intentional— *i.e.*, the parties intended for the sections to have different meanings.").

[76] Defs.' Opening Br. 32-33, 35-36; *see* Term Sheet 7.

[77] As a result, the defendants' argument that treating the Specified Termination Event obligations as a condition precedent to termination creates circularity in view of the "Specified Payment Date" (as defined in the Amended Term Sheet) fails.  *See* Defs.' Opening Br. 36 (discussing that the Specified Termination Date requires payment after the Specified Termination Event); *see* Am. Term Sheet § 3 (defining Specified Payment Date as "(A) 3 months after the date of the Specified Termination Event, in the event of termination of employment by WOHCF or any of their successors or assigns without Cause, or termination by Employee for Good Reason; and (B) 6 months after the date of the Specified Termination Event, in the event of death, Disability or termination after 5 years of the Start Date for any reason").

16

Section 6.1 of the LLC Agreements and the Term Sheet conflicted, Section 6.1 would prevail.[78]

The Term Sheet and LLC Agreements are complementary in setting the process for effectuating Soleimani's removal. The White Oak LLCs can terminate Soleimani's employment at any time for any reason (and they have). The process of effecting his termination remains ongoing. His formal removal as an employee and as Manager of the White Oak LLCs is ineffective until the bargained-for steps of Section 6.1 are completed.

### B. Whether the Conditions of Section 6.1 Have Been Satisfied

Section 6.1 of the LLC Agreements conditions the removal of Soleimani as an employee and Manager on the Company's satisfaction of "its obligations under the Term Sheet relating to a Specified Termination Event (as defined in the Term Sheet)."[79] This provision incorporates the Term Sheet's definition of a "Specified Termination Event."[80] The Term Sheet, as amended, sets out a four-part, disjunctive definition of Specified Termination Event:

> The "Specified Termination Event" shall mean the occurrence of ***any of the following events***: termination of Employee's employment by [White Oak Healthcare] or [White Oak Global] without Cause;

---

[78] LLC Agreements § 11.12 ("To the extent that the Term Sheet conflicts with any provision [of the LLC Agreements], the provisions [of the LLC Agreements] shall prevail.").

[79] *Id.* § 6.1.

[80] *Id*.

termination of employment by the Employee for Good Reason (as defined below); Employee's death or Disability; ***or termination by either the Employee or [White Oak Finance] after five (5) years from the Start Date for any reason***.[81]

The fourth part of the definition is at the center of the present dispute. It provides that a Specified Termination Event occurs if Soleimani is terminated: (1) "for any reason" by either party; and (2) after December 31, 2020 (five years from the December 31, 2015 Start Date).[82] "For any reason" is a broad, inclusive phrase.[83] Soleimani's employment was purportedly terminated by the Approval Committees on September 18, 2023—for a reason.[84]

---

[81] Am. Term Sheet 4 (emphasis added). The Term Sheet is governed by California law. Term Sheet 9. "Both Delaware and California courts take a plain meaning approach to contract interpretation." *KT4 P'rs. LLC v. Palantir Techs. Inc.*, 2021 WL 2823567, at *18 (Del. Super. June 24, 2021). California courts look to the parties' "objective intent" evidenced by "the words of the contract" to interpret the agreement, not "the subjective intent of one of the parties." *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 135 Cal. Rptr. 2d 505, 514 (Cal. Ct. App. 2003). My analysis of the Term Sheet's language aligns with both states' plain meaning interpretation principles.

[82] Term Sheet 1 (defining "Start Date" as "[n]o later than December 31, 2015").

[83] *See Ashland LLC v. Samuel J. Heyman 1981 Continuing Tr. for Heyman*, 2017 WL 1191099, at *5 (Del. Super. Mar. 29, 2017) (noting that Delaware courts "generally define 'any' as all-encompassing" (citing *Prestancia Mgmt. Gp., Inc. v. Virginia Heritage Found., II LLC*, 2005 WL 1364616, at *7 (Del. Ch. May 27, 2005))); *EMSI Acquisition, Inc. v. Contrarian Funds, LLC*, 2017 WL 1732369, at *11 n.65 (Del. Ch. May 3, 2017) (collecting authorities reflecting the breadth of the word "any"); *see also Any*, Merriam-Webster, https://www.merriam-webster.com/diciontary/any (last visited April 8, 2024) (defining "any" as "one or some indiscriminately of whatever kind").

[84] Compl. ¶ 27; Answer ¶ 27.

The defendants argue that the "for any reason" portion of the Specified Termination Event definition is inapplicable because Soleimani was terminated "for Cause."[85] Nothing in the definition of Specified Termination Event supports that limitation. Instead, they point to clauses (A) and (B) of Amended Term Sheet Section 6(i), which detail what Soleimani is entitled to receive when his employment concludes depending upon the nature of his termination.[86] Clause (A) addresses Soleimani's entitlement to, for example, his earned but unpaid base salary, earned but unpaid revenue sharing interests, and prorated portions of a guaranteed bonus upon a termination for Cause.[87] Clause B provides that, upon a Specified Termination Event, he "shall be entitled to receive," among other things, the "Calculated Fair Market Values of his HVE Revenue Sharing Interests, and ownership interests.[88]

---

[85] Defs.' Opening Br. 40.

[86] *Id.* at 43-44 (quoting Am. Term Sheet § 6(i)(A), (B)).

[87] Am. Term Sheet § 6(i)(A) ("If Employee's employment is terminated by WOHCF for Cause, Employee will be entitled to receive (i) any earned but unpaid Base Salary through the date of termination, (ii) any earned but unpaid HVE Revenue Sharing Interests, (iii) any Special Payments through the date of termination, and (iv) the prorated portion of any unpaid Guaranteed Bonus for the year of termination through the date of Employee's termination, pro-rated based on an interpolation between the last scheduled date of a Guaranteed Bonus payment and the next subsequent scheduled date of a Guaranteed Bonus payment; provided, however, the Employee will not be entitled to receive (a) any awarded but unpaid Discretionary Bonus, (b) any Guaranteed Bonus for the years subsequent to the Employee's date of termination, or (c) except as otherwise required by law, any entitlement to participate in any applicable employee benefits arrangements.").

[88] *Id.* § 6.1(i)(B) ("If Employee's employment is terminated due to a Specified Termination Event, (i) Employee shall be entitled to receive on or prior to the Specified Payment Date

19

The defendants insist that clause (A) delineating payment obligations in the event of a for Cause termination controls because it addresses a more specific scenario than the Specified Termination Event discussed in clause (B).[89]  This reading makes sense, in the defendants' view, because it reflects an intention that Soleimani would not receive the fair market value of his revenue sharing interests if he were terminated for Cause.  But clause (B) regarding payment obligations for a Specified Termination Event belies the defendants' reading.  It carves out specific payments "in connection with a Specified Termination Event  . . . by [White Oak

---

(a) any earned but unpaid Base Salary through the date of termination, (b) any earned but unpaid HVE Revenue Sharing Interests, and any Special Payments through the date of termination, and (c) subject to any Delayed Payment Scenario, any earned or awarded but unpaid annual Discretionary Bonus, (ii) any unpaid Guaranteed Bonus payments (i.e., those amounts that are unpaid but otherwise due in March 2021, March 2022, March 2023 and March 2024) shall be accelerated and paid to Employee on the applicable Specified Payment Date (*other than in connection with a Specified Termination Event that is by the Employee without Good Reason or by WOHCF for Cause*) and (iii) the Calculated Fair Market Values of his HVE Revenue Sharing Interests, and ownership interests shall be paid to Employee on any Specified Termination Date as provided under HVE Revenue Sharing Interests above.  If within three months of the termination, an agreement is entered into, which, if consummated would result in a Company Sale, then, at the closing of such Company Sale, the Employee shall receive a payment to 'true-up' the Calculated Fair Market Value of any applicable HVE Revenue Sharing Interests as if he was employed in good standing at the time of the Company Sale.  After such termination, the Employee will, except as otherwise required by law, lose any entitlement to participate in any applicable employee benefits arrangements." (emphasis added)).

[89] Defs.' Opening Br. 45 (quoting authority providing that specific language in a contract controls over general language).

Healthcare] for Cause."[90]   If a Specified Termination Event excluded all terminations for Cause, this text would be surplusage.

Moreover, the corresponding section of the Term Sheet incorporating these clauses contemplates that a termination "for any reason" may be with or without Cause. The Term Sheet that grants White Oak Global and White Oak Healthcare the power to terminate Soleimani's employment "at any time and for any reason . . . with or without Cause."[91]   If the phrase "for any reason" excluded for Cause removal, as the defendants contend, this provision would be meaningless. The same words ("for any reason") used in different parts of a contract should be interpreted similarly.[92]

Thus, the Term Sheet read as a whole confirms that the phrase "for any reason" must be construed broadly and literally. The Specified Termination Event

---

[90] *See supra* note 88 (emphasized text).

[91] Term Sheet 7 ("Each of [White Oak Global] or [White Oak Healthcare] (as applicable) and Employee has the right to terminate Employee's employment at any time and for any reason (in the case of [White Oak Global] or [White Oak Healthcare] (as applicable), [White Oak Global] or [White Oak Finance] (as applicable) may terminate Employee with or without Cause"); *see* Defs.' Opening Br. 2, 7, 20, 29, 39, 34-36, 39.

[92] *See JJS, Ltd. v. Steelpoint CP Hldgs., LLC*, 2019 WL 5092896, at *6 (Del. Ch. Oct. 11, 2019) (discussing canons of construction including "the presumption of consistent usage, which provides that 'absent anything indicating a contrary intent, the same phrase should be given the same meaning when it is used in different places in the same contract'" (citation omitted)); 11 Williston on Contracts § 32:6 (4th ed.), Westlaw (database updated May 2023) ("Generally, a word used by the parties in one sense will be given the same meaning throughout the contract in the absence of countervailing reasons.") (citation omitted).

definition does not limit the phrase to *qualified* reasons (as the defendants argue).[93]

In the event of a for Cause termination, Soleimani's entitlement to receive the calculated fair market value of certain revenue sharing interests depended on timing. If Soleimani were terminated for Cause before the five year anniversary of the Start Date, he would not be entitled to the fair market value of his revenue sharing interests. But if he were terminated after that date, it would constitute a Specified Termination Event requiring him to receive "the Calculated Fair Market Values of his HVE Revenue Sharing Interests, and ownership interests."[94]

*        *        *

Soleimani's arguments are supported by the text of the LLC Agreements and the Term Sheet. Because the relevant language is unambiguous (and neither party argues otherwise), I need not consider extrinsic evidence. "If a contract is

---

[93] *See* Defs.' Opening Br. 42.

[94] Am. Term Sheet § 6(i)(B)(iii). The defendants contend that even if Soleimani's termination triggered a Specified Termination Event, there is no payment obligation for three reasons: (1) any debt incurred in the ordinary course by White Oak Healthcare must be paid off before Soleimani can receive consideration; (2) the "Specified Payment Date," as defined in the Term Sheet, has not passed and no appraisal of Soleimani's interests has occurred; and (3) a reasonable appraisal of the fair market value of the relevant revenue sharing interests would equal zero. Defs.' Opening Br. 47. Any disagreements about the value of these revenue sharing interests and the parties' obligations under the Term Sheet are, however, subject to an arbitration provision and are not before me. Term Sheet 12. Soleimani has initiated a proceeding that is pending before the American Arbitration Association concerning an alleged breach of the Term Sheet for nonpayment. *See* Pls.' Opening Br. 16.

unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity."[95]

Enforcing the plain language of the contract does not create an absurd or commercially unreasonable result.[96] Soleimani was involved in launching the business and negotiated for a fully vested equity stake if he devoted five or more years to it. The defendants agreed to a structure by which Soleimani could remain an employee and Manager of the White Oak LLCs until the Company acquired his equity stake.

Section 6.1 of the LLC Agreements says what it means and means what it says: Soleimani effectively remains an employee and Manager of the White Oak

---

[95] *Eagle Indus.*, 702 A.2d at 1232; *see also Capital Mgmt. Co. v. Brown*, 813 A.2d 1094, 1097 (Del. 2002).

[96] The defendants lay out a series of hypotheticals that they say reflect the absurdity of enforcing the plain terms of the contracts. For example, they argue that predicating Soleimani's removal on payment could hypothetically delay the effectiveness of his termination by up to six months while the value of his interests is resolved. Defs.' Opening Br. 37. Or, if Section 6.1 requires the termination of Soleimani's employment in order to remove him as Manager, the White Oak LLCs would have no way to remove him if he resigned as an employee but not as Manager. Defs.' Opening Br. 38. Further, Soleimani could be on both sides of the appraisal process in any mediation or arbitration with the White Oak Entitles while his roles as employee and Manager remained effective. *Id.* These situations are not necessarily absurd. Perpetual managers are allowed under the Delaware Limited Liability Company Act. *See* 6 *Del. C.* § 18-602. And conflicted transactions are a reality for many Delaware entities—one that the LLC Agreements themselves account for. *See* LLC Agreements Art. I (stating that "Fair Market Value . . . shall be valued at the fair value as may be determined by a third party appraiser agreed to by the Approval Committee and the Class B Member, acting reasonably and in good faith").

23

LLCs until the Company satisfies its Specified Termination Event obligations.[97] The defendants may find this outcome unpalatable.[98] Still, it is not this court's job to "relieve sophisticated parties of the burdens of contracts they wish they had drafted differently."[99] "Parties have a right to enter into good and bad contracts, the law enforces both."[100]

## III. CONCLUSION

Soleimani's motion for summary judgment is granted. The defendants' cross-motion for summary judgment is denied. Soleimani's termination as an employee

---

[97] The defendants contend that granting summary judgment in favor of Soleimani will "effect his reinstatement as an employee," which is impermissible under California law. Cal. Civil Code § 3390 ("The following obligations cannot be specifically enforced: (a) [a]n obligation to render personal service[;] (b) [a]n obligation to employ another in personal service."); *see supra* note 81. But Soleimani is not seeking reinstatement. He is seeking a declaration that he was never properly removed as Manager of the White Oak LLCs in the first place. *See* Compl. ¶ 34. The mechanism to effect his removal is established by the LLC Agreements, which are governed by Delaware law. And to the extent that they are inconsistent with the Term Sheet, the LLC Agreements govern. LLC Agreements § 11.12; *see supra* note 78.

[98] Indeed, the outcome is not one I relish since it may create some level of instability for the nominal defendants. I am, however, charged with enforcing the bargain that the parties and their lawyers negotiated for at the time of contracting.

[99] *DeLucca v. KKAT Mgmt., L.L.C.*, 2006 WL 224058, at *2 (Del. Ch. Jan. 23, 2006); *see also Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010) (explaining that the court "must assess the parties' reasonable expectations at the time of contracting and not rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal").

[100] *Nemec*, 991 A.2d at 1126 (citation omitted); *see also* 6 *Del. C.* § 18-1101(b) (pronouncing that the policy purpose of the Delaware LLC Act is to "give the maximum effect to the principle of freedom of contract and to the enforceability of" limited liability company agreements).

of the White Oak LLCs is ineffective under the LLC Agreements. He therefore remains Manager of the White Oak LLCs and is entitled to a declaration to that effect under 6 *Del. C.* § 18-110.